**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO.: 1:24-cv-22064-DPG/DSW**

**NOVO NORDISK A/S**
**and NOVO NORDISK INC.,**

**Plaintiffs,**

**v.**

**MD EXAM, LLC,**

**Defendant.**
______________________________________/

**REPORT AND RECOMMENDATION ON**
**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

THIS CAUSE is before the Court on the Motion for Summary Judgment ("Motion") and supporting Statement of Material Facts ("SOF") filed by Plaintiffs Novo Nordisk A/S and Novo Nordisk, Inc. (collectively, "Plaintiffs" or "Novo Nordisk") [ECF Nos. 44, 43].[1] Defendant MD Exam, LLC ("Defendant") opposed Plaintiffs' Motion but did not file a response to Plaintiffs' SOF. [2] [ECF No. 45]. Plaintiffs replied. [ECF No. 46]. Upon consideration of the parties' filings

[1] This Motion was referred to the undersigned for a report and recommendation by the Honorable Darrin P. Gayles. [ECF No. 52].

[2] Defendant did not file a Statement of Material Facts in response to Plaintiffs' SOF. Therefore, under Local Rule 56.1(c), Plaintiffs' material facts that are supported by properly cited record evidence are deemed admitted. *See Charlemagne v. Alibayof*, No. 20-62043-CIV, 2022 WL 1642299, at *1 (S.D. Fla. Apr. 29, 2022); *Jones v. Unity Behav. Health, LLC*, No. 20-14265, 2021 WL 5495578, at *4 (11th Cir. Nov. 23, 2021) ("Because Jones failed to properly controvert Unity's statement of material facts, the court was authorized to "deem[ ] admitted" those facts. S.D. Fla. Local Rule 56.1(c).").

and the record, the undersigned recommends that Plaintiffs' Motion be GRANTED on liability with further proceedings on remedies, for the reasons below.

## I. UNDISPUTED MATERIAL FACTS

Plaintiff Novo Nordisk A/S is a Danish healthcare corporation, and Plaintiff Novo Nordisk, Inc., is its indirect, wholly owned U.S. subsidiary. [ECF No. 1 at ¶¶ 8–10]. Together, Plaintiffs promote, offer, and sell FDA-approved semaglutide medicines, including Ozempic, for adults with type 2 diabetes, and Wegovy, for long-term weight management in adults and children with obesity and adults with weight-related medical conditions. [ECF No. 43 ¶¶ 2–4]. Novo Nordisk A/S holds registered U.S. trademarks for both the "Ozempic" and "Wegovy" marks, and Plaintiffs advertise the medicines through the internet, social media, and other channels. [*Id.* ¶¶ 2–10].

Defendant advertises and sells compounded semaglutide products to consumers seeking weight-loss treatments. [*Id.* ¶ 12]. Defendant's compounded semaglutide products are not FDA-approved. [*Id.* ¶ 16]. Beginning in March 2023 and continuing through at least May 2024, Defendant used Novo Nordisk's Ozempic and Wegovy marks in advertising on its website and social media to attract consumers and increase sales. [*Id.* ¶¶ 13, 19, 22–24, 28]. Defendant knew that Novo Nordisk owns the marks and that Defendant was not authorized to use them. [*Id.* ¶¶ 17–18, 27].

Some of Defendant's customers mistakenly believed they were purchasing Ozempic itself, or a generic or equivalent version of it, when they purchased compounded semaglutide products from Defendant. [*Id.* ¶¶ 32–35]. An advertising communications survey commissioned by Novo Nordisk also found that Defendant's Facebook advertisement and Facebook post using the

---

Ozempic® mark caused respondents to understand the advertised medication to be Ozempic or the same as or equivalent to Ozempic. [*Id.* ¶¶ 36–43]. After accounting for control responses, 67.4% of respondents who saw the advertisement and 82.6% of respondents who saw the post indicated that understanding. [*Id.* ¶ 42].

A separate materiality survey found that such representations were important to consumers' purchasing decisions: 61.8% of respondents indicated they would consider a statement that the advertised medication is the same as or equivalent to Ozempic when deciding whether to purchase, and 66.8% stated that such a representation would make them more likely to purchase. [*Id.* ¶¶ 44–45]. Similarly, 51.3% of respondents would consider a statement that the medication was made by the same company that makes Ozempic, and 58.3% stated that such a representation would make them more likely to purchase the product. [*Id.* ¶ 45].

## II. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Genuine disputes are those in which the evidence is such that a reasonable jury could return a verdict for the non-movant." *Ellis v. England*, 432 F.3d 1321, 1325-26 (11th Cir. 2005). "For factual issues to be considered genuine, they must have a real basis in the record." *Id.* at 1326 (internal citation omitted). "For instance, mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Id.* (internal citation omitted). "Moreover, statements in affidavits that are based, in part, upon information and belief, cannot raise genuine issues of fact, and thus also cannot defeat a motion for summary judgment." *Id.* (internal citations omitted).

The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corpi. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)(1)(A)). When the moving party bears the burden of proof at trial, "the moving party must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the nonmoving party." *United States v. Four Parcels of Real Prop. in Greene & Tuscaloosa Ctys. in State of Ala.*, 941 F.2d 1428, 1438 (11th Cir. 1991) (internal citation omitted). "If the moving party makes such an affirmative showing, it is entitled to summary judgment unless the nonmoving party, in response, comes forward with significant, probative evidence demonstrating the existence of a triable issue of fact." *Id.* (internal quotations and citations omitted).

## III. DISCUSSION

Plaintiffs move for summary judgment on all five counts of the Complaint. [ECF No. 44 at 8]. Novo Nordisk A/S alone asserts Count I for trademark infringement under 15 U.S.C. § 1114(1). Both Plaintiffs assert Count II for trademark infringement, false designation of origin, and unfair competition under 15 U.S.C. § 1125(a)(1)(A); Count III for false advertising under 15 U.S.C. § 1125(a)(1)(B); Count IV for unfair competition under Florida common law; and Count V for violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").

### A. Novo Nordisk is Entitled to Summary Judgment on Its Trademark Infringement (Count I) and Unfair Competition Claims (Count II).

To prevail on Count I for trademark infringement, Novo Nordisk A/S must establish that it owns valid federally registered marks, that Defendant used the marks in commerce without Novo Nordisk A/S's consent, and that the unauthorized use was likely to cause confusion. *See Optimum*

*Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1241 (11th Cir. 2007). Count II, asserted by both Plaintiffs for unfair competition, requires a showing that Defendant's use of the marks in commerce "is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association" of the Defendant with the Plaintiffs, "or as to the origin, sponsorship, or approval" of Defendant or its products. 15 U.S.C. § 1125(a)(1)(A). The same analysis that governs infringement claims under 15 U.S.C. § 1114(1), also applies to unfair competition claims brought under 15 U.S.C. § 1125(a)(1)(A). *See Suntree Techs., Inc. v. Ecosense Int'l, Inc.*, 693 F.3d 1338, 1346 (11th Cir. 2012). Here, Counts I and II are both based on the same unauthorized uses of the Ozempic and Wegovy marks, and each turns on the same likelihood-of-confusion showing. So the Court will jointly address the infringement and unfair competition claims in this section.

The summary judgment record establishes that Plaintiffs have each satisfied the threshold requirements for their trademark infringement and unfair competition claims. First, there is no dispute that Novo Nordisk A/S owns the federal registrations for the Ozempic and Wegovy marks. Both Novo Nordisk A/S and Novo Nordisk, Inc., promote, offer, and sell those medicines in the United States. [ECF No. 43 ¶¶ 2, 6–10]. Novo Nordisk, while not the registrant, "is an indirect, wholly owned subsidiary of [Novo Nordisk A/S]." *See* [Decl. of Anne McCaughan, ECF No. 43-1 ¶ 3]. As a result, it can pursue the unfair competition claim based on injury or likely injury to its protected commercial interests in the sale and goodwill of the medicines. *See D.H. Pace Co. v. OGD Equip. Co.*, 78 F.4th 1286, 1295–98 (11th Cir. 2023).

Defendant's unauthorized use of the Plaintiffs' marks is not in dispute. Defendant concedes use of the marks to advertise its compounded semaglutide products and weight-loss services, including in a Facebook advertisement and on its website. [ECF No. 43 ¶¶ 13, 19–24]. Defendant

also admits that it never requested or received express permission to use the marks. [ECF No. 45 at 1–2]. The Court therefore turns to the remaining issue of whether the undisputed record evidence establishes that Defendant's use of the marks was likely to cause confusion.

**1. Likelihood of Confusion Analysis**

Courts in the Eleventh Circuit apply the following multi-factor test when determining whether a likelihood of confusion exists:

> (1) strength of the mark alleged to have been infringed; (2) similarity of the infringed and infringing marks; (3) similarity between the goods and services offered under the two marks; (4) similarity of the actual sales methods used by the holders of the marks, such as their sales outlets and customer base; (5) similarity of advertising methods; (6) intent of the alleged infringer to misappropriate the proprietor's goodwill; and (7) the existence and extent of actual confusion in the consuming public.

*Tana v. Dantanna's,* 611 F.3d 767, 774-75 (11th Cir. 2010).

The importance of each factor is determined on a case-by-case basis. *See Jellibeans, Inc. v. Skating Clubs of Georgia, Inc*., 716 F.2d 833, 840 n.17 (11th Cir. 1983). Here, Defendant failed to respond to Plaintiffs' arguments on the first five factors. [ECF No. 46 at 3]. The Court thus finds them conceded. *See Jones v. Bank of Am., N.A.*, 564 F. App'x 432, 434 (11th Cir. 2014) (holding that a party's failure to respond to a claim raised in a summary judgment motion indicates that the claim is unopposed); *Cont'l Tech. Servs., Inc. v. Rockwell Int'l Corp.*, 927 F.2d 1198, 1199 (11th Cir. 1991) ("An argument not made is waived, whether based on federal law, the law of the forum state, or the law of a foreign state."). The Court will therefore only address actual confusion by the consuming public and Defendant's intent to misappropriate Plaintiffs' goodwill — the only two factors that the Defendant addressed in its Response. [ECF No. 45 at 8–11].

**a. Actual Confusion**

The "evidence of actual confusion" is deemed to be one of the "most important" factors in determining likelihood of confusion. *Fla. Int'l Univ. Bd. of Trs. v. Fla. Nat'l Univ., Inc.*, 830 F.3d 1242, 1255 (11th Cir. 2016); *see also Caliber Auto. Liquidators, Inc. v. Premier Chrysler, Jeep, Dodge, LLC*, 605 F.3d 931, 936 (11th Cir. 2010). Plaintiffs have submitted undisputed survey evidence bearing on actual confusion, and such evidence is standard and compelling proof of confusion. *See Engineered Tax Servs., Inc. v. Scarpello Consulting, Inc.*, No. 16-81795-CV, 2018 WL 741371, at *3 (S.D. Fla. Feb. 6, 2018) ("The customer survey is a method to demonstrate the existence of actual confusion, which is compelling proof of likelihood of confusion."); *see also Wreal LLC v. Amazon.com, Inc.*, No. 14-21385-CIV, 2015 WL 12550932, at *15 (S.D. Fla. Feb. 3, 2015), *report and recommendation adopted*, No. 14-21385-CIV, 2015 WL 12550912 (S.D. Fla. Aug. 31, 2015), *aff'd*, 840 F.3d 1244 (11th Cir. 2016) ("The ABA Section of Intellectual Property Law treatise on surveys describes survey evidence as "a standard form of evidence—perhaps *the* standard form of evidence—on consumer perception in cases involving trademarks and deceptive advertising.") (citation omitted).

The survey respondents were drawn from consumers who purchased weight-loss drugs. [ECF No. 43 ¶ 38]. Each viewed either Defendant's actual advertisement or post using the Ozempic mark, or a control version in which "Ozempic" was replaced with "semaglutide." [*Id.* ¶¶ 36–41]. After accounting for control responses, 67.4% of respondents who saw the advertisement and 82.6% of respondents who saw the post indicated that they understood the medication in the advertisement or post to be Ozempic® or the same as or equivalent to Ozempic. [*Id.* ¶ 42].

Defendant argues that Plaintiffs' survey evidence is weak because it offers no testimony from any patients Defendant treated. Defendant, however, has not presented any opposing evidence. Moreover, the likelihood of confusion inquiry is not limited solely to consumers who completed a purchase from the alleged infringer. *See Jellibeans*, 716 F.2d at 845–46; *see also RXD Media, LLC v. IP Application Dev. LLC*, 986 F.3d 361, 375–76 (4th Cir. 2021) (rejecting the argument that actual confusion required evidence of mistakenly completed purchases). Defendant's conclusory assertion, without supporting record evidence, that its own patients understood what they were buying is insufficient to rebut survey evidence directed to the relevant consumers in the marketplace.

In addition to the survey evidence, Novo Nordisk submitted consumer statements reflecting confusion between Defendant's advertisements and Novo Nordisk's Ozempic product. A Reddit user reported seeing a Facebook advertisement for "generic ozempic" from Defendant and scheduling a telehealth visit with Defendant. [ECF No. 43 ¶¶ 32–35]. In addition, several Better Business Bureau complaints referred to purchases of "Ozempic," "Ozempic (generic)," or "oral Ozempic" from Defendant. [*Id.*].

Defendant argues that these consumer online comments are based on "vague hearsay" and should not be considered. This Court, however, finds persuasive the courts that have considered this issue and have ruled that, in the trademark infringement context, customer statements are not hearsay or are subject to the state of mind exception to hearsay. *See Lincare Holdings Inc. v. Doxo, Inc.*, No. 8:22-cv-2349-VMC-AEP, 2024 WL 865881, at *2-3 (M.D. Fla. Feb. 29, 2024) (collecting cases and agreeing with the "majority approach and finds that the customers' statements…are not hearsay or, alternatively, satisfy the state of mind exception"); *You Fit, Inc. v. Pleasanton Fitness*, LLC, No. 8:12-cv-1917-JDW-EAJ, 2013 WL 521784, at *5 n.13 (M.D. Fla.

Feb. 11, 2013) ("[T]he comments [posted on yelp.com] are not hearsay . . . . Rather, plaintiffs invoke the comments to demonstrate the consumer's confusion, a then-existing mental state of the declarant who posted the comments."). Accordingly, Novo Nordisk's record evidence of customer statements is appropriately considered on summary judgment for the purposes of the actual confusion analysis. Other than the hearsay argument, Defendant has not otherwise disputed Plaintiffs' survey evidence. Considered together, Plaintiffs' marketplace evidence and unrebutted survey evidence weigh strongly in favor of actual confusion.

Although likelihood of confusion is generally a question of fact, the issue may be resolved on summary judgment where the undisputed record evidence would lead a reasonable juror to only one conclusion. *See Tana*, 611 at 775 n.7; *see also All. Metals, Inc. of Atlanta v. Hinely Indus., Inc.,* 222 F.3d 895, 907 (11th Cir. 2000). Given the strength of Novo Nordisk's marks and the unrebutted evidence of actual confusion, the Court finds a likelihood of confusion as a matter of law. *See, e.g.*, *Univ. of Georgia Athletic Ass'n v. Laite*, 756 F.2d 1535 (11th Cir. 1985) ("We find most significant…the similarity of design between the two marks and the defendant's intent. In our view, these two factors alone are sufficient to support the conclusion reached by the court below."); *see also Wesco Mfg., Inc. v. Tropical Attractions of Palm Beach, Inc.*, 833 F.2d 1484, 1488 (11th Cir. 1987) ("[W]e may affirm an ultimate finding on the issue of confusion that is not clearly erroneous, even when the district court fails to consider all seven factors.").

**b. Defendant's Intent to Misappropriate Plaintiffs' Goodwill**

Defendant correctly asserts that one of the factors that this Court must consider in determining likelihood of confusion is whether the defendant has a conscious intent to capitalize on the plaintiff's business reputation, was intentionally blind to the effect of its use, or otherwise manifested an improper intent. [ECF No. 45 at 9]. Defendant, however, did not respond to the

Plaintiffs' statement of material facts as to intent, which were properly supported by citations to the record. *See* [ECF 43 ¶¶ 30, 47, 48]. Those facts are therefore deemed admitted. *See supra* note 1. In its Response, Defendant directs the Court to the deposition testimony of Dev Ranagarajan in which he testified that MD Exam did not intend to violate Plaintiffs' trademark rights. [ECF No. 45 at 14]. Even if this Court were to consider this factual reference, which was not properly included in an opposing statement of material fact, it would not be sufficient to meet Defendant's burden to oppose summary judgment. *See Tidwell v. Carter Prods.*, 135 F.3d 1422, 1425 (11th Cir. 1998) ("The nonmoving party must provide more than a mere scintilla of evidence to survive a motion for judgment as a matter of law.").

Moreover, even if Defendant's intent was a disputed point, given the Plaintiffs' undisputed evidence of actual confusion, Defendant's intent carries very little weight and does not move the needle in Defendant's favor. "[W]hile intent is of some probative value, particularly if a bad intent is shown, it is neither a necessary nor sufficient condition for determining the ultimate legal fact of the "likelihood of confusion." *Jellibeans, Inc.*, 716 F.2d at 843 n.23 (citation omitted).

**2. Defendant's Fair Use Affirmative Defense Does Not Preclude Summary Judgment**

Defendant argues that its fair use affirmative defense precludes summary judgment on Plaintiffs' trademark and unfair competition claims. [ECF No. 45 at 10–11]. Defendant's fair use arguments fall short.[3] To the extent Defendant asserts descriptive fair use, the Court finds that such defense fails. The defense applies only when the challenged terms are used "(1) other than as a

---

[3] Defendant's ten (10) remaining affirmative defenses fare no better because they do not constitute valid affirmative defenses. An affirmative defense raises matters extraneous to the plaintiff's prima facie case; a defense, like failure to state a claim, which points out a defect in the plaintiff's prima facie case is not an affirmative defense. *Affiliati Network, Inc. v. Wanamaker*, No. 18-22576-CIV, 2019 WL 7376766, at *8 (S.D. Fla. Nov. 25, 2019), *aff'd,* 847 F. App'x 583 (11th Cir. 2021); *see also In re Rawson Food Serv., Inc.*, 846 F.2d 1343, 1349 (11th Cir. 1988).

mark, (2) in a descriptive sense, and (3) in good faith." *Hard Candy, LLC v. Anastasia Beverly Hills, Inc.*, 921 F.3d 1343, 1363–64 (11th Cir. 2019). Defendant satisfies none of these requirements. Here, MD Exam did not use the marks to describe any characteristic, quality, ingredient, or function of its services. [ECF No. 43 ¶ 11]. Rather, it used them as brand identifiers in advertising for its own offerings. And the same undisputed evidence establishing Defendant's intent to capitalize on consumers' familiarity with the marks forecloses a finding of good faith. [*Id.* ¶¶ 30, 47–48]. Defendant's use therefore was neither descriptive nor "other than as a mark." *See La Potencia, LLC v. Chandler*, 733 F. Supp. 3d 1238, 1268 (S.D. Fla. 2024). Any argument that MD Exam used the marks solely to identify the genuine drugs would concern nominative use, not descriptive fair use.

Next, to the extent Defendant invokes nominative fair use as a defense, the Court finds Defendant's arguments are equally unpersuasive. The Eleventh Circuit has not decided whether nominative fair use is an affirmative defense to trademark infringement or whether it is instead considered as part of the likelihood-of-confusion analysis. *Parsons v. Regna*, 847 F. App'x 766, 773–74 (11th Cir. 2021). But even assuming the doctrine applies, Defendant has not satisfied it. Nominative fair use requires the defendant to prove that "(1) plaintiff's product . . . is not readily identifiable without use of the trademark; (2) defendants used only so much of the mark as is reasonably necessary to identify the plaintiff's product…; and (3) the user of the mark does nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder." *Id.*

Nominative fair use does not apply where the challenged use implies affiliation, sponsorship, or endorsement by the mark holder. *See MPS Entm't, LLC v. Abercrombie & Fitch Stores, Inc.*, No. 11-24110-CIV, 2013 WL 3288039, at *12 (S.D. Fla. June 28, 2013). Here,

Defendant attached the Ozempic and Wegovy marks to Defendant's own offerings for compounded products, advertising "oral Ozempic" and a "Wegovy Program." [ECF No. 43 ¶¶ 19–28]. Those descriptions do not distinguish Defendant's products from Novo Nordisk's branded products and instead imply an affiliation that does not exist. Accordingly, wherever nominative fair use fits within the likelihood-of-confusion analysis, the doctrine does not apply to Defendant's use of Novo Nordisk's marks. *See Ford Motor Co. v. O.E. Wheel Distribs., LLC*, 868 F. Supp. 2d 1350, 1368–69 (M.D. Fla. 2012) (rejecting nominative fair use where listings for "O.E. Ford wheels" not manufactured by Ford suggested Ford's manufacture of or affiliation with the wheels and thus did not accurately reflect the relationship between the parties' products).

Accordingly, the undisputed record establishes Defendant's liability under 15 U.S.C. §§ 1114(1) and 1125(a)(1)(A). The undersigned therefore recommends that Plaintiffs' Motion be granted as to liability on Counts I and II, with partial summary judgment entered in favor of Novo Nordisk A/S on Count I and in favor of both Plaintiffs on Count II.

**B. Novo Nordisk is Entitled to Summary Judgment on Its Unfair Competition Claim under Florida Common Law (Count IV).**

In order to prevail on a Florida common law unfair competition claim, the plaintiff must prove that: "(1) the plaintiff is the prior user of the mark; (2) the mark is arbitrary, suggestive, or has secondary meaning; (3) the defendant is using a confusingly similar mark to indicate similar goods marketed in competition with the plaintiff in the same trade area in which the plaintiff has already established its mark; and (4) because of the defendant's action, consumer confusion regarding the defendant's goods is likely." *EVKM Techs., LLC v. Individuals, P'ships, & Unincorporated Ass'ns Identified on Schedule A*, 829 F. Supp. 3d 1164, 1172 (S.D. Fla. 2026) (citing *Tiffany (NJ) LLC v. Benefitfortiffany.com*, No. 16-60829-CIV, 2016 WL 8679081, at *5

(S.D. Fla. Nov. 3, 2016), *report and recommendation adopted,* No. 16-60829-CIV, 2016 WL 8678880 (S.D. Fla. Dec. 20, 2016)).

Florida common-law unfair competition based on trademark infringement is governed by the same likelihood-of-confusion analysis applicable to the federal trademark claims. *See Gift of Learning Found., Inc. v. TGC, Inc.*, 329 F.3d 792, 802 (11th Cir. 2003). “The legal standard for unfair competition, which includes palming off and false designation of origin, and trademark infringement under both the Lanham Act and common law has been held to be essentially the same,” as they each require a demonstration that “the defendant’s use of the mark in commerce creates a likelihood of confusion among consumers as to the origin of the goods.” *Shenzhen Kinwong Elec. Co. v. Kukreja*, 778 F. Supp. 3d 1255, 1295 (S.D. Fla. 2025), *amended in part*, 2025 WL 2337095 (S.D. Fla. Aug. 13, 2025); *see also Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1475 n.3 (11th Cir. 1991) (“[T]he same facts support a cause of action for unfair competition as for trademark infringement; if there is no genuine issue of fact as to trademark infringement, there is none as to unfair competition, either.”).

Here, since “[t]here is no essential difference between trade-mark infringement and what is loosely called unfair competition,” we need not repeat the analysis for Counts I and II. *ADT LLC v. Skyline Sec. Mgmt., Inc.*, No. 24-CV-20758, 2026 WL 575122, at *21 (S.D. Fla. Mar. 2, 2026) (citing *Duty Free Americas, Inc. v. Estee Lauder Cos., Inc.*, 797 F.3d 1248, 1276 (11th Cir. 2015); *Fla. Int’l Univ. Bd. of Trs.*, 830 F.3d at 1267 (“FIU correctly acknowledges that its Florida trademark infringement claim (Claim Four) and its common law infringement and unfair competition claim (Claim Five) rise or fall with its federal trademark infringement and unfair competition claims.”). Therefore, for the above reasons, the undersigned recommends that partial summary judgment be granted in favor of both Plaintiffs on Count IV.

**C. Novo Nordisk is Entitled to Summary Judgment on its False Advertising Claim Under the Lanham Act (Count III).**

To succeed on its false advertising claim under the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), Novo Nordisk must show that "(1) the ads of the opposing party were false or misleading, (2) the ads deceived, or had the capacity to deceive, consumers, (3) the deception had a material effect on purchasing decisions, (4) the misrepresented product or service affects interstate commerce, and (5) the movant has been—or is likely to be—injured as a result of the false advertising." *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1247 (11th Cir. 2002) (internal citations omitted). When a statement is literally false, the plaintiff need not separately prove actual consumer deception. *See Osmose, Inc. v. Viance, LLC*, 612 F.3d 1298, 1319 (11th Cir. 2010).

While Defendant's opposition to Plaintiffs' summary judgment motion addresses the trademark infringement claims in part, it is silent as to the false advertising claim. [ECF No. 46 at 2]. As explained above, a party concedes an argument it fails to oppose at summary judgment. *See Jones*, 564 F. App'x at 434. Plaintiffs are thus entitled to partial summary judgment on the false advertising claim (Count III) for this reason alone. Moreover, the undisputed record fully supports summary judgment in Plaintiffs' favor on the merits.

**1. Defendant's Statements About its Semaglutide Products Are False**

A plaintiff can satisfy the first element of a false advertising claim by showing "that the statements at issue were either (1) commercial claims that are literally false as a factual matter or (2) claims that may be literally true or ambiguous but which implicitly convey a false impression, are misleading in context, or likely to deceive customers." *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1261 (11th Cir. 2004). The record establishes that Defendant's advertising was false or, at a minimum, misleading in context. Defendant advertised "oral Ozempic," but Defendant never sold a product called "oral Ozempic," and the record reflects that no such product

exists. [ECF No. 43 ¶¶ 23–26]. Defendant also advertised a "Wegovy Program" while using Novo Nordisk's Wegovy mark, but Defendant did not sell Wegovy to its patients. [*Id.* ¶¶ 19–21]. In addition, Defendant used Novo Nordisk's Ozempic and Wegovy marks to promote its own compounded semaglutide products, which are neither Novo Nordisk medicines nor FDA-approved. [*Id.* ¶¶ 13–18, 22–28].

**2. Defendant's Advertisements Deceived or Had the Capacity to Deceive Consumers**

Because the Court found that Novo Nordisk established, based on the record, that advertisements were false, Novo Nordisk is "not required to present evidence of consumer deception." *See Osmose, Inc.*, 612 F.3d at 1319. Nonetheless, as the Court found in its likelihood-of-confusion analysis above, Plaintiffs' survey evidence demonstrates misunderstanding among consumers. *See Taylor v. Trapeze Mgmt.*, LLC, No. 0:17-CV-62262-KMM, 2019 WL 1468515, at *3 (S.D. Fla. Feb. 27, 2019) ("To prove an advertisement is misleading, [Novo Nordisk] must present evidence of deception in the form of consumer surveys, market research, expert testimony, or other evidence") (quotations omitted); s*ee also Hickson Corp.*, 357 F.3d at 1261 ("Consumer survey research often is a key part of a Lanham Act claim alleging that an advertisement is misleading or deceptive.").

**3. The Deception in Defendant's Advertisements Was Material**

"Even when a court finds that a defendant's ads are literally false, the plaintiff . . . must still establish that the defendant's deception is likely to influence the purchasing decision." *N. Am. Med. Corp. v. Axiom Worldwide*, *Inc.*, 522 F.3d 1211, 1226 (11th Cir. 2008) (cleaned up). Deception is material if it is likely to influence the purchasing decisions of consumers. A plaintiff may make that showing by establishing that the defendant "misrepresented an inherent quality or characteristic of the product." *1-800 Contacts*, 299 F.3d at 1250. Whether a medication is FDA-

approved is such a characteristic. *See, e.g.*, *Novo Nordisk A/S v. New England Weight Loss, LLC*, No. 1:25-CV-00141-SE-AJ, 2025 WL 3217407, at *3 (D.N.H. Oct. 17, 2025), *report and recommendation approved*, No. 25-CV-141-SE-AJ, 2025 WL 3216072 (D.N.H. Nov. 18, 2025) ("[defendant's] false implication that its products were FDA approved was a material misrepresentation"); *Genus Lifesciences, Inc. v. Lannett Co.*, 378 F. Supp. 3d 823, 842 (N.D. Cal. 2019) (false statements regarding a product's FDA approval are material in light of customer preferences for approved drugs); *Concordia Pharms., Inc. v. Method Pharms.*, LLC, No. 3:14CV00016, 2016 WL 1271082, at *10 (W.D. Va. March 29, 2016) (noting that a pharmaceutical product's approval, among other things, would likely influence purchasing decisions). For these reasons, Novo Nordisk has established the materiality of Defendant's misrepresentations.

**4. Defendant's Advertisements Were Used in Interstate Commerce**

The interstate commerce element is met. Defendant disseminated the advertisements nationwide through its website and social media channels. [ECF No. 43 ¶¶ 1, 5, 19–20, 22, 28]. Advertising over the internet satisfies the Lanham Act's "in commerce" requirement. *See Planetary Motion, Inc.*, 261 F.3d at 1195.

**5. Defendant's False Statements were Likely to Injure Novo Nordisk**

"[A]lthough diversion of sales to a direct competitor may be the paradigmatic direct injury from false advertising, it is not the only type of injury cognizable under [the Lanham Act]." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 138 (2014). "Courts have therefore afforded relief under [the Lanham Act] not only where a defendant denigrates a plaintiff's product by name…but also where the defendant damages the product's reputation…." *Id.* (internal citations omitted); *see also Bern Unlimited, Inc. v. Burton Corp.*, 95 F. Supp. 3d 184, 217 (D.

Mass. 2015) ("The injury may be in the form of lost sales to actual or prospective buyers of the product or harm to the goodwill or reputation of the competitor.").

Both forms of injury are present here. Defendant deliberately used the Ozempic® mark to get consumers' attention and increase sales, providing compounded semaglutide products to roughly 8,000 patients by May 2024. [ECF No. 43 ¶¶ 47–49]. Consumers who believed they were purchasing Novo Nordisk's medicines expressed dissatisfaction with what they received. That dissatisfaction harms the reputation of Novo Nordisk and its FDA-approved medicines. [*Id.* ¶¶ 32–35, 29].

**D. Novo Nordisk Is Entitled to Summary Judgment on Its FDUTPA Claim (Count V).**

FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1). A plaintiff seeking damages under section 501.211(2) must establish "(1) a deceptive act or unfair trade practice; (2) causation; and (3) actual damages." *Dolphin LLC v. WCI Cmtys., Inc.*, 715 F.3d 1243, 1250 (11th Cir. 2013). "A finding of liability for trademark infringement will *per se* constitute a violation of FDUTPA." *Nutradose Labs, LLC v. Bio Dose Pharma, LLC*, 710 F. Supp. 3d 1200, 1231 (S.D. Fla. 2024), *aff'd sub nom. Nutradose Labs, LLC v. Santamarta*, No. 24-10381, 2025 WL 337971 (11th Cir. Jan. 30, 2025) (citing *Casa Dimitri Corp. v. Invicta Watch Co. of Am., Inc.*, 270 F. Supp. 3d 1340 (S.D. Fla. 2017)). Accordingly, Novo Nordisk is entitled to summary judgment on Count V.

**E. Summary Judgment is Warranted as to Liability, with Remedies Reserved for Further Proceedings.**

As discussed above, Novo Nordisk is entitled to summary judgment as to liability on each of its claims. Plaintiffs seek disgorgement of Defendant's profits, corrective-advertising costs, and injunctive relief as damages. [ECF No. 1 ¶¶ 65–66, 76–77, 86–87, 95, 106].

Disgorgement is "appropriate when '(1) the defendant's conduct was willful and deliberate, (2) the defendant was unjustly enriched, or (3) it is necessary to deter future conduct.'" *Deltona Transformer Corp. v. NOCO Co.*, 186 F.4th 1313, 1335 (11th Cir. 2026) (citing *PlayNation Play Sys., Inc. v. Velex Corp.*, 924 F.3d 1159, 1170 (11th Cir. 2019)). And, where disgorgement is awarded, a defendant may deduct profits that it can prove were not earned due to its conduct. *See* 15 U.S.C. § 1117(a). "Specifically, the Lanham Act provides that '[i]n assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed.'" *Tiramisu Int'l LLC v. Clever Imports LLC*, 741 F. Supp. 2d 1279, 1290 (S.D. Fla. 2010) (citing 15 USC § 1117(a)). Even if disgorgement is an appropriate remedy, the Motion does not address Defendant's sales. Nor does Defendant's Response address appropriate deductions. The summary judgment record is also insufficient to determine Plaintiffs' request for corrective-advertising costs.

Injunctive relief is an appropriate remedy where, as here, the plaintiff establishes a causal link between an injury and Defendant's conduct. Plaintiffs have met this burden; however, the Motion does not adequately address the nature and scope of injunctive relief requested by the Plaintiffs.

For these reasons, available remedies associated with Plaintiffs' claims and Defendant's conduct cannot be awarded on this summary judgment record. Accordingly, the Motion should be granted solely as to liability, and the case should proceed to further proceedings on remedies,

including a determination of whether disgorgement is an appropriate remedy under the circumstances of this case.

## IV. CONCLUSION

Based on the foregoing, the undersigned respectfully recommends that Plaintiffs' Motion for Summary Judgment be **GRANTED** as to liability on Counts I through V, with partial summary judgment entered in favor of Novo Nordisk A/S on Count I and in favor of both Plaintiffs on Counts II, III, ad IV, and V. The Court should conduct further proceedings to determine Plaintiffs' remedies.

## V. OBJECTIONS

The Parties will have fourteen (14) days from the completion of the court-ordered Settlement Conference to file written objections, if any, with the Honorable Darrin P. Gayles, United States District Judge. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in this Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report, except upon grounds of plain error, if necessary, in the interest of justice. See 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY SUBMITTED** in Chambers in Fort Lauderdale, Florida on this 13th day of November 2026.

**DETRA SHAW-WILDER**
**UNITED STATES MAGISTRATE JUDGE**

cc: Counsel of Record